**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| LEAH GRAHAM**,** Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MICROVAST HOLDINGS, INC., YANG WU, FARIYAL KHANBABI, CARL T. SCHULTZ, and RODNEY WORTHEN,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Leah Graham ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Microvast Holdings, Inc. ("Microvast" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Microvast securities

between April 1, 2025 and March 16, 2026, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Microvast purports to design, develop, and manufacture "advanced specialized battery technologies", primarily for use in electric commercial vehicles and energy storage systems ("ESS").  The Company refers to commercial vehicles as customer platforms.

3.     In recent years, Microvast has experienced significant turnover at the Chief Financial Officer ("CFO") position.  Before Defendant Rodney Worthen was appointed interim CFO in August 2025, Microvast had four different CFOs in the preceding three year-period: Craig Webster (April 2022 through April 2024), Yasser Ali ("Ali") (July 2024 through August 2024), Defendant Fariyal Khanbabi ("Khanbabi") (October 2024 through April 2025), and Defendant Pat T. Schultz ("Schultz") (April 2025 through August 2025).  Two of those CFOs (Ali and Schultz) lasted less than a year in the role, and Microvast did not provide investors with any reason for the eventual departures of three of the CFOs (Ali, Khanbabi, and Schultz).

4.     Notwithstanding the high turnover in the CFO role, Microvast consistently touted the Company's business and growth prospects throughout the Class Period.  At the outset of the Class Period, Microvast announced the expansion of its manufacturing facility located in Huzhou, China, dubbing the initiative "Huzhou Phase 3.2", claiming that its increased production capacity would be online before the end of 2025.

5.     Defendants likewise advised investors to expect improved margins, touting a supposed "strategic repositioning away from low-margin segments" and a new "focus . . . towards more profitable, higher-value opportunities".

6. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) due to, *inter alia*, inventory management issues and delays in commercial vehicle rollouts by Microvast's customers, Defendants had overstated Microvast's ability to reach its margin targets; (ii) Defendants overstated Microvast's ability to complete the Huzhou Phase 3.2 expansion by the end of 2025; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

7. The market received its first inkling of the true state of Microvast's business and operations on June 25, 2025, when short seller Grizzly Research issued a report concerning Microvast (the "Grizzly Report"), alleging that the Company "is fabricating a significant part of its business and capabilities", including, *inter alia*, by overstating the level of activity at its production facilities, including the Huzhou facility, and likewise overstating the prospective economic opportunities from its commercial partnerships.

8. Following publication of the Grizzly Report, Microvast's stock price plunged during intraday trading, falling as much as $0.40 per share, or approximately 10.23%, before ultimately closing at $3.90 per share.

9. Then, barely one month after the Grizzly Report, on August 1, 2025, Microvast announced the departure of its CFO, Defendant Schultz, just three months after he joined the Company.

10. On this news, Microvast's stock price fell $0.30 per share, or approximately 9.93%, to close at $2.72 per share on August 4, 2025.

11.    Then, on November 10, 2025, Microvast issued a press release reporting its financial and operating results for the quarter ended September 30, 2025, in which it revealed that production following the Huzhou Phase 3.2 expansion would not begin until Q1 2026 – after repeatedly advising investors that the additional capacity associated with the expansion would be online by Q4 2025.

12.    On this news, Microvast's stock price fell $0.50 per share, or approximately 10%, to close at $4.48 per share on November 11, 2025.

13.    Finally, on March 16, 2026, Microvast issued a press release reporting its financial and operating results for the quarter and year ended December 31, 2025.  Among other items, Microvast reported that gross margin declined to approximately 1% for the quarter, down sharply from approximately 36% for the same period in the prior year, which the Company attributed to inventory impairment charges arising from "specialized ESS components".  Microvast also reported revenue of $96.5 million for the quarter, representing a 15% year-over-year decrease and falling well short of the consensus estimate of $136.4 million.  Microvast attributed this result to "regulatory shifts in South Korea and delays in customer platform ramp-up" in Europe, the Middle East, and Africa.

14.    On this news, Microvast's stock price fell $0.79 per share, or 34.2%, to close at $1.52 per share on March 17, 2026.

15.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

16.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

18.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Microvast is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

19.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

20.     Plaintiff, as set forth in the attached Certification, acquired Microvast securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

21.     Defendant Microvast is a Delaware corporation with principal executive offices located at 12603 Southwest Freeway, Suite 300, Stafford, Texas 77477.  The Company's common stock trades in an efficient market on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "MVST".

22. Defendant Yang Wu ("Wu"), Microvast's founder, served as its Chief Executive Officer and Chairman of its Board of Directors at all relevant times.

23. Defendant Khanbabi served as Microvast's CFO from the start of the Class Period until April 7, 2025.

24. Defendant Schultz served as Microvast's CFO between April 21, 2025, and July 29, 2025.

25. Defendant Rodney Worthen ("Worthen") served as Microvast's Interim CFO from August 7, 2025, until January 7, 2026, when he was appointed CFO on a non-interim basis. Worthen served in this capacity through the remainder of the Class Period.

26. Defendants Wu, Khanbabi, Schultz, and Worthen are collectively referred to herein as the "Individual Defendants".

27. The Individual Defendants possessed the power and authority to control the contents of Microvast's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Microvast's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Microvast, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

28. Microvast and the Individual Defendants are collectively referred to herein as "Defendants".

**SUBSTANTIVE ALLEGATIONS**

**Background**

29.     Microvast engages in the design, development, and manufacturing of battery components and systems primarily for electric commercial vehicles and energy storage systems.

**Materially False and Misleading Statements**

30.     The Class Period begins on April 1, 2025, the day after Microvast filed an annual report on Form 10-K with the SEC, reporting its financial and operating results for the quarter and year ended December 31, 2024, and issued a press release announcing the same (the "FY 2024 Earnings Release").  That press release quoted Defendant Wu as touting the Company's purported performance for the year, providing investors with a timeline for the Company's Huzhou Phase 3.2 expansion, and stating Defendants' "core focus" was "achieving sustainable profitability", stating *inter alia*:

> "We achieved record quarterly revenue in the fourth quarter of 2024, beating revenue guidance.  This brings our full year revenue growth to 23.9% and we delivered these revenues at a gross margin also above guidance.  The revenue growth achieved in [Europe, Middle East, and Africa ("EMEA")] is encouraging and we would expect to continue this growth into 2025," said Yang Wu, Microvast's Founder, Chairman, and Chief Executive Officer.  "*In [Asia & Pacific Region ("APAC")], we are underway with our Huzhou Phase 3.2 expansion and anticipate to have this additional capacity online in the fourth quarter of 2025* to meet increasing customer demand as we prioritize uncovering new opportunities and market segments.[1]  Our backlog has grown to $401.3 million as regional demand for our technology continues to rapidly grow.  We have realized great successes in the global heavy industrials segment and the maturing Korean market.  The significant strides we've made in operational efficiencies in the second half of 2024 will continue into 2025 as our core focus remains on achieving sustainable profitability."

31.     During a conference call to discuss the financial results announced in the FY 2024 Earnings Release, Defendant Wu provided investors with an update concerning Defendants'

---

[1] All emphases herein have been added unless otherwise indicated

Huzhou Phase 3.2 initiative, stating that Defendants "anticipate first qualified production to come online in the fourth quarter of 2025", *inter alia*:

> We are happy to give a progress update on our Huzhou Phase 3.2 expansion project. This new line should give us up to an additional 2 gigawatt hour per year of production capacity in order to meet the high demand for our products. Cleanroom utilities and equipment installation are all well underway. The expansion leverages our existing infrastructure and expertise and will help enable us to produce both current and future technologies. ***We anticipate first qualified production to come online in the fourth quarter of 2025***.

32.    Defendant Khanbabi touted the gross margin figures the Company announced in the FY 2024 Earnings Release, stating that they were the "result[]" of gross profit "driven by operational efficiencies, increased utilization and disciplined cost control implementation" implying that this improved margin would persist into the future, stating *inter alia*:

> Gross profit for Q4 2024 was $41.5 million, up from $23 million in Q4 2023, an 80% improvement ***driven by operational efficiencies, increased utilization and disciplined cost control implementation***. This resulted in a gross margin of 36.6% compared to 22% in the prior year period, a 14.6 percentage point improvement. For the full year, gross profit was $119.6 million, more than double the prior year's $57.2 million, reflecting a 109% increase. Gross margin for the full-year 2024 was 31.5%, up from 18.7% in 2023, a 12.8 percentage point improvement, ***reflecting operating leverage and continued efficiency gains***.

33.    Defendant Khanbabi provided investors with another reason to expect improved margins into the future, as she described Defendants' "strategic repositioning away from low-margin segments" and "focus . . . towards more profitable, higher-value opportunities", stating *inter alia*:

> In Asia Pacific, revenue declined from $219.1 million in 2023 to $177.7 million in 2024, a 19% year-over-year decrease. ***This decline is aligned with our strategic repositioning away from low-margin segments*** in China and India, where price competition remains intense with lower-priced LFP options. ***Our focus has shifted towards more profitable, higher-value opportunities***, especially in regions that emphasize technology differentiation over commoditization.

34.     Defendant Wu reinforced this during his final remarks on the FY 2024 Earnings Call, concerning Defendants' outlook for the then-upcoming fiscal year 2025.  Defendant Wu stated that Defendnats "aim to maintain a gross margin target of 30%" before repeating Defendants' expectation that the Huzhou Phase 3.2 initiative would "come online later this year", stating *inter alia*:

> We expect 2025 revenue to increase 18% to 25% year-over-year.  This puts our revenue guidance in the range of $450 million to $475 million.  *We also aim to maintain a gross margin target of 30%.  For our APAC business, we continue to target production capacity improvements at our Huzhou facility to meet increasing customer demand.  Our Phase 3.2 expansion is anticipated to come online later this year*, which is expected to give us up to 2 gigawatt hour of additional capacity across a variety of our high-performance products. . . .   To summarize, 2024 was a year of significant progress and strategic realignment for Microvast.  We achieved record revenues, demonstrating the strong global demand for our high-performance battery solutions, particularly in EMEA region.  *We have significantly improved our gross margins* and delivered positive adjusted EBITDA in the second-half of the year.  Similarly, *a clear shift towards sustainable profitability*.

35.     On April 9, 2025, Microvast announced the appointment of Defendant Schultz as its CFO, advising that Schultz's tenure would begin later that month.

36.     On May 12, 2025, Microvast filed a quarterly report on Form 10-Q with the SEC reporting its financial and operating results for the quarter ended March 31, 2025, and issued a press release announcing the same.  In discussing the Company's "2025 Outlook", this press release reiterated the Company's target of "gross margin of 30%" and "[i]nstallation of production equipment for Huzhou Phase 3.2" in time for "first qualified products in Q4 2025", stating *inter alia*:

> "2025 Outlook: . . .   Through 2025, with continued regional efficiencies and utilization increases, the Company is targeting a gross margin of 30%; Installation of production equipment for Huzhou Phase 3.2, increasing our capacity to meet strong customer demand and targeting first qualified products in Q4 2025[.]"

37.    Also on May 12, 2025, Microvast held a conference call to discuss the financial and operating results it announced that day (the "Q1 Earnings Call").  During this call, Defendant Wu provided an update concerning the Huzhou Phase 3.2 initiative.  Defendant Wu assured investors that the Phase 3.2 initiative "is on track", providing a detailed update on progress towards completion, and reiterated Defendants' expectation that the Company would "achiev[e] the first qualified production from this new line in the fourth quarter of 2025", stating *inter alia*:

> I'd like to provide an update to our Phase 3.2 expansion.  ***The clean rooms are nearly completed, utility equipment installation is complete, and we are currently installing the production equipment.  Our Huzhou Phase 3.2 expansion project is on track*** to add up to two gigawatt-hours of annual production capacity, strategically positioned to, address the strong market demand for our solutions.  This expansion leverages our established infrastructure and deep expertise, enabling the production of both our current and next-generation battery technologies.  ***We anticipate achieving the first qualified production from this new line in the fourth quarter of 2025***.

38.    Also during the Q1 Earnings Call, Defendant Wu reiterated Defendants' year-end revenue guidance and gross margin target of "approximately 30%" even as he stated that circumstances surrounding the "global supply chain" had "impacted the rollout time lines for certain light commercial vehicle platforms", implying that Defendants' targets were achievable despite these headwinds, stating *inter alia*:

> While we remain optimistic about our trajectory this past quarter presented headwinds, preliminarily due to global supply chain, uncertainties and trade disruptions, which have impacted the rollout time lines for certain light commercial vehicle platforms. . . .  As we look ahead through the remainder of 2025, our initial guidance remains an anticipated year-over-year revenue increase of 18% to 25%, placing our target range between $450 million and $475 million.  We also continue to aim for full year gross margin of approximately 30%.

39.    During his remarks on the Q1 Earnings Call, Defendant Worthen provided investors with detailed on the Company's financial performance for the quarter, highlighting the performance of Microvast's EMEA business as "key customers continue to ramp their vehicle

production", stating *inter alia*: "Our EMEA business grew by 108% year-over-year and accounted for 52% of our quarterly revenue, up from 36% a year ago as we continue to grow our partnerships and key customers continue to ramp their vehicle production."

40.    Later during the Q1 Earnings Call, Defendant Wu provided investors with an outlook for the rest of the calendar year, reaffirming Defendants' full year gross margin guidance of 30% and repeating that Huzhou Phase 3.2 would be "online[] later this year" and was "crucial" to Microvast's efforts, stating *inter alia*:

> As we look ahead through the remainder of 2025, our initial guidance remains an anticipated year-over-year revenue increase of 18% to 25%, placing our target range between $450 million and $475 million.  We also continue to aim for full year gross margin of approximately 30%.  ***Our APAC operations are focused on bringing the Phase 3.2 expansion, at our Huzhou facility online, later this year***.  ***This additional capacity*** expected to reach up to 2 gigawatt hour annually, ***will be crucial*** in meeting the robust customer demand, across our diverse portfolio.

41.    The statements referenced in ¶¶ 30–34, 36–40 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) due to, *inter alia*, inventory management issues and delays in commercial vehicle rollouts by Microvast's customers, Defendants had overstated Microvast's ability to reach its margin targets; (ii) Defendants overstated Microvast's ability to complete the Huzhou Phase 3.2 expansion by the end of 2025; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

42.    The market received its first inkling of the true state of Microvast's business and operations on June 25, 2025, when short seller Grizzly Research issued the Grizzly Report,

11

alleging that the Company "is fabricating a significant part of its business and capabilities", including, *inter alia*, by overstating the level of activity at its production facilities, including the Huzhou facility, and likewise overstating the prospective economic opportunities from its commercial partnerships.

43.     Specifically, Grizzly Research highlighted inconsistencies in Microvast's claims concerning the number of employees that work at its Huzhou facility.  Citing documents published by the Chinese government, Grizzy Research noted that the number of employees at the Huzhou facility decreased by 400 during a time at which Microvast purportedly completed an earlier Phase 3.1 expansion.  Moreover, Grizzly Research claimed that Microvast issued inconsistent claims concerning the number of Huzhou facility employees.  When Microvast responded to another short seller report in November 2023, it claimed that its "manufacturing plant in Huzhou, China has more than 2,500 employees".  However, in the annual report on Form 10-K that Microvast filed on April 1, 2024, the Company claimed that it had fewer employees globally: "As of December 31, 2023, we had 2,006 full-time employees and 955 independent contractors."

44.     Grizzy Research also claimed that the "vast majority" of Microvast's customers represented insignificant economic opportunities for the Company, despite its statements to the contrary.  For example, Grizzly Research examined Gaussin, a company to which Microvast claimed it would sell more than $450 million of batteries for electric and hydrogen trucks, over the course of five years.  Grizzly Research noted that Gaussin's annual revenue at the time, €10.2 million, was far too low to justify such a projection.  Indeed, Gaussin has since gone bankrupt and both the company and its CEO were fined by French regulator the Financial Markets Authority Sanctions Commission for issuing false statements to investors.

12

45.     Following publication of the Grizzly Report, Microvast's stock price plunged during intraday trading, falling as much as $0.40 per share, or approximately 10.23%, before ultimately closing at $3.90 per share.

46.     Notwithstanding the foregoing disclosures and resulting drop in Microvast's share price, Microvast's stock continued to trade at artificially inflated prices due to Defendants' continued false and misleading statements about, *inter alia*, Microvast's ability to reach its margin targets and its ability to complete the Huzhou Phase 3.2 expansion by the end of 2025.

### The Truth Continues to Emerge

47.     The market continued to grasp true state of Microvast's business and operations on on August 1, 2025, when Microvast announced the departure of its CFO, Defendant Schultz, ***just over three months after he joined the Company***.  The Company released a terse statement when announcing Defendant Schultz's departure, without offering any insight as to the reasons for his departure, stating:  "On July 29, 2025, Carl T. (Pat) Schultz ceased to be employed as Chief Financial Officer of Microvast Holdings, Inc."

48.     On this news, Microvast's stock price fell $0.30 per share, or approximately 9.93%, to close at $2.72 per share on August 4, 2025.

49.     Notwithstanding the foregoing disclosures and resulting drop in Microvast's share price, Microvast's stock continued to trade at artificially inflated prices due to Defendants' continued false and misleading statements about, *inter alia*, Microvast's ability to reach its margin targets and its ability to complete the Huzhou Phase 3.2 expansion by the end of 2025.

50.     For example, on August 11, 2025, Microvast issued a press release announcing its financial and operating results for the quarter ended June 30, 2025.  The press release quoted Defendant Wu as touting the Company's quarterly gross margin among other metrics as "a

testament to . . . the effectiveness of our relentless focus on profitability and operational efficiency", stating *inter alia*:

> "Continuing to build upon our momentum, Microvast is charting an exceptional course. We delivered a record second quarter, with revenue reaching $91.3 million, marking a 9.2% year-over-year increase. This growth is matched with gross margin expansion to 34.7%. While we booked a GAAP net loss of $106.1 million, we also achieved a positive adjusted EBITDA of $25.9 million. ***These results are a testament to*** the increasing demand for our advanced battery solutions and ***the effectiveness of our relentless focus on profitability and operational efficiency***," said Yang Wu, Microvast's Founder, Chairman, and Chief Executive Officer.

51. Also on August 11, 2025, Microvast held a conference call to discuss the financial and operating results announced earlier that day (the "Q2 Earnings Call"). During that call, Defendant Worthen asserted that Microvast's quarterly profitability evidenced Defendants' "relentless focus on operational execution, increased utilization and cost controls", and attributed its reduction in operating expenses for the quarter "largely" to "previously implemented cost control measures", stating *inter alia*:

> Turning to profitability. Our gross profit for the second quarter was $31.7 million, a 17% improvement over the same period last year, driven by our relentless focus on operational execution, increased utilization and cost controls. Our gross margin improved by 2.2 percentage points to 34.7%, up from 32.5% in Q2 2024. . . . Operating expenses decreased to $16.5 million for the quarter, compared to $126.7 million in Q2 2024, an 87% reduction year-over- year. This reduction across G&A, R&D and sales and marketing was largely due to reduced share-based compensation and previously implemented cost control measures.

52. Also during the Q2 Earnings Call, Defendant Wu provided investors with an update on Microvast's outlook for the rest of the calendar year. Among other items, Defendant Wu reported that Defendants were ***raising*** Microvast's gross margin target from 30% to 32%, reiterated Defendants' expectation that the Huzhou Phase 3.2 initiative would "come online later this year", and stated that Defendants "expected" Microvast's "high-growth EMEA business" to "maintain its strong momentum," stating *inter alia*:

14

For the remainder of 2025, our initial revenue guidance holds firm.  We are targeting a year-over-year revenue increase of 18% to 25%, which put[s] our projected range between $450 million and $475 million.  *We are slightly updating our targeted full year gross margin from 30% to 32% as we are focusing on stronger performing, higher-margin products*.  In our APAC operations, all eyes are on *our Phase 3.2 expansion at the Huzhou facility, which we anticipate will come online later this year*. This additional capacity of up to 2 gigawatt-hour annually is a direct response to the robust customer demand for our solutions.  Our development teams are also making significant progress on the next wave of advanced products.  *Our high-growth EMEA business is expected to maintain its strong momentum*, continuing to drive significant year-over-year revenue increases.  We are actively pursuing new strategic partnerships to support both our current and upcoming product lines in the region.

53.    Defendant Wu made clear to investors that Defendants remained focused on Microvast's margins, stating *inter alia*:  "*We remain laser-focused on* achieving our priorities for the remainder of this year which are achieving positive cash flow, *sustaining our strong margins* and expanding our market reach through relentless, innovation and strategic collaboration."

54.    The statements referenced in ¶¶ 50–53 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) due to, *inter alia*, inventory management issues and delays in commercial vehicle rollouts by Microvast's customers, Defendants had overstated Microvast's ability to reach its margin targets; (ii) Defendants overstated Microvast's ability to complete the Huzhou Phase 3.2 expansion by the end of 2025; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Continues to Emerge**

55.    On November 10, 2025, Microvast filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for the quarter ended September 30, 2025, and issued a press release announcing the same (the "Q3 Earnings Release").

56.    The Q3 Earnings Release revealed to the market that Defendants now expected that the Huzhou Phase 3.2 expansion's additional production capacity would only come online *after* the end of the year despite Defendants' repeated assurances that production would begin during 2025, stating *inter alia*:

> 2025 Outlook: . . .  The Company is updating gross margin outlook for full year 2025 from 32% to a target range of 32% to 35%; The Company expects to finish installation and commissioning of production equipment for our Huzhou Phase 3.2 expansion by year-end *with initial production to follow*, increasing our capacity to meet strong customer demand[.]

57.    Defendant Wu repeated this revelation during the conference call Microvast held to discuss the financial and operating results announced in the Q3 Earnings Release.  When providing investors an update concerning the Huzhou Phase 3.2 expansion, Defendant Wu stated for the first time that Defendants "anticipate this new line initial production *to begin in Q1 2026*", stating *inter alia*:

> I'm pleased to report that we are in the final stages of installing and commissioning the production equipment with completion targeted for year-end, this expansion is critically important as Phase 3.2 is anticipated to add up to 2 Gigawatt hour of annual production capacity.  The strategic timing of this expansion is intended to directly address existing market demand and position us to capture upcoming opportunities. *We anticipate this new line initial production to begin in Q1 2026*. This expansion is a major step forward, securing our foundation for continued growth in 2026 and beyond.

58.    On this news, Microvast's stock price fell $0.50 per share, or approximately 10%, to close at $4.48 per share on November 11, 2025.

16

59.     Notwithstanding the foregoing disclosures and resulting drop in Microvast's share price, Microvast's stock continued to trade at artificially inflated prices due to Defendants' continued false and misleading statements about, *inter alia*, Microvast's ability to reach its margin targets.

60.     For example, the Q3 Earnings Release quoted Defendant Wu as touting the Company's gross margin for the quarter, which he claimed "reflect[ed] continued improvements in efficiency and product mix," stating *inter alia*:

> "Microvast is on an impressive trajectory, achieving a record third quarter with revenue of $123.3 million, a 21.6% increase year-over-year.  Our gross margin rose to 37.6%, reflecting continued improvements in efficiency and product mix.  While we booked a GAAP net loss of $1.5 million, we also delivered a positive adjusted EBITDA of $21.9 million, demonstrating the growing demand for our innovative battery solutions and the tangible results of our focus on profitability and operational excellence," said Yang Wu, Microvast's Founder, Chairman, and Chief Executive Officer.

61.     The Q3 Earnings Release also announced Defendants were ***raising*** their expected annual gross margin "***from 32% to a target range of 32% to 35%***": "2025 Outlook: . . .  The Company is updating gross margin outlook for full year 2025 from 32% to a target range of 32% to 35%[.]"

62.     Defendant Wu repeated Defendants' new margin guidance when providing Defendants' outlook "for the rest of the year" during the Q3 Earnings Call, and reassured investors that Microvast's EMEA business "is expected to maintain momentum", stating *inter alia*:

> Please turn to Slide 15, which provides a summary of our outlook for the rest of the year.  We are pleased to affirm our initial annual revenue guidance, which positions our projected revenue in the range of $450 million to $475 million.  Due to our focus on stronger performing segments and a successful margin expansion efforts, ***we are also raising our full year gross margin target from 32% to a new range of 32% to 35%***. . . .  We expect a strong sales growth for the year, and our development teams are making significant progress on the next wave of advanced products.  ***Our EMEA business is expected to maintain momentum***.

63.     The statements referenced in ¶¶ 60–62 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) due to, *inter alia*, inventory management issues and delays in commercial vehicle rollouts by Microvast's customers, Defendants had overstated Microvast's ability to reach its margin targets; (ii) Defendants overstated Microvast's ability to complete the Huzhou Phase 3.2 expansion by the end of 2025; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

64.     On March 16, 2026, Microvast filed with the SEC an annual report on Form 10-K reporting its fourth quarter and full year 2025 financial results and issued a press release announcing the same (the "FY 2025 Earnings Release"). Among other items, Microvast reported revenue of $96.5 million for the quarter, representing a 15% year-over-year decrease and falling well short of the consensus estimate of $136.4 million. In the FY 2025 Earnings Release, Microvast attributed the results to "regulatory shifts in South Korea and delays in customer platform ramp-up" in Europe, the Middle East, and Africa.

65.     Also in the FY 2025 Earnings Release, Microvast reported that gross margin declined to ***approximately 1%*** for the quarter, down sharply from approximately 36% for the same period in the prior year, which the Company attributed to "inventory impairment charges":

> Gross margin decreased to 1.0%, compared to 36.6% in Q4 2024, this change was primarily attributable to inventory impairment charges, which negatively impacted our gross margin by 30.1 percentage points; Non-GAAP adjusted gross margin decreased to 1.0%, compared to 36.7% in Q4 2024.

66.     During a conference call Microvast held to discuss its financial results for the fiscal quarter and year ended December 31, 2025 (the "FY 2025 Earnings Call"), Defendant Worthen

18

specified that this inventory impairment charge arose from "specialized ESS components", stating *inter alia*:

> Full year gross profit reached $122.1 million. This resulted in full year gross margin of 28.6% compared to 31.5% in 2024. This change was primarily attributable to $32.5 million in inventory impairment charge related to specialized ESS components, which negatively impacted our gross margin by 7.6 percentage points.

67.     The Form 10-K that Microvast filed that day stated that the $32.5 million impairment charge that caused the company to miss its twice-raised gross margin guidance arose from ESS inventory that "was specifically manufactured for a customer and did not generate any associated revenue during 2025."

68.     Also during the FY 2025 Earnings Call, Defendant Wu provided an update on the Huzhou Phase 3.2 expansion, stating that "[t]rial production" had begun for a portion of one of Microvast's products, and claimed "[w]e are on track to achieve serial production in 2026", stating *inter alia*:

> In APAC, while we navigated a regulatory environment in Korea, we are focused on a long-term via our Huzhou Phase 3.2 expansion, which is expected to bring additional capacity online in 2026. . . . [O]ur Huzhou Phase 3.2 project is progressing well with clean rooms and utility equipment already in operation. Trial production for our 55 amp-hour cell has begun on the electrode section, assembly and formation, and no-load test has started. This expansion is a critical component of our growth strategy as Phase 3.2 is expected to add up to 2 gigawatt hour of annual production capacity . . . . [The Huzhou Phase 3.2] expansion remains our primary operational catalyst for the year. We are on track to achieve serial production in 2026. Phase 3.2 is a critical milestone that brings online the capacity necessary to meet upcoming demand for our next-generation cell technology.

69.     On this news, Microvast's stock price fell $0.79 per share, or 34.2%, to close at $1.52 per share on March 17, 2026.

70.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

19

**Regulation S-K Item 105**

71.     Throughout the Class Period, Microvast's periodic financial filings were required to disclose the adverse facts and circumstances detailed above under applicable SEC rules and regulations.  Specifically, Item 105 of SEC Regulation S-K, 17 CFR § 229.105 ("Item 105"), required Microvast to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the [Company] or offering speculative or risky" and "[c]oncisely explain how each risk affects the [Company] or the securities being offered."  Defendants failed to disclose, *inter alia*, the scope and severity of the risk that inventory management issues and delays in commercial vehicle rollouts by Microvast's customers would cause Defendants to miss their margin targets, and the scope and severity of the risk that Defendants would not complete the Huzhou Phase 3.2 expansion by the end of 2025.  Defendants' failure to disclose the foregoing issues violated Item 105 because these issues represented material factors that made an investment in the Company speculative or risky.

**SCIENTER ALLEGATIONS**

72.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  Defendants repeatedly spoke to the status of the Huzhou Phase 3.2 expansion, as alleged *supra* ¶¶ 30–31, 34, 36–37, 40, 52, without disclosing that production under the expanded capacity of the Huzhou facility would not begin until the 2026 fiscal year, and the purported "strategic repositioning", "laser-like focus", and operational efficiencies that supported their optimistic gross margin targets, as alleged *supra* ¶¶ 32–34, 38, 50–53, 60–62, without disclosing that issues including, *inter alia*, inventory management issues and delays in commercial vehicle rollouts by Microvast's customers,

threatened their ability to meet the margin target they raised *twice* during the Class Period.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

73.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Microvast securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

74.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Microvast securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Microvast or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

75.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

21

76.　　Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

77.　　Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Microvast;

- whether the Individual Defendants caused Microvast to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Microvast securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

78.　　A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

79.　　Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Microvast securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Microvast securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

80.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

81.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

82.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

83.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

23

84.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Microvast securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Microvast securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

85.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Microvast securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Microvast's finances and business prospects.

86.      By virtue of their positions at Microvast, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

24

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

87.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Microvast, the Individual Defendants had knowledge of the details of Microvast's internal affairs.

88.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Microvast.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Microvast's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Microvast securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Microvast's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Microvast securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

89.    During the Class Period, Microvast securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Microvast securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Microvast securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Microvast securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

90.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

91.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## **COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

92.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

93.    During the Class Period, the Individual Defendants participated in the operation and management of Microvast, and conducted and participated, directly and indirectly, in the conduct of Microvast's business affairs.  Because of their senior positions, they knew the adverse non-public information about Microvast's misstatement of income and expenses and false financial statements.

94.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Microvast's financial condition and results of operations, and to correct promptly any public statements issued by Microvast which had become materially false or misleading.

95.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Microvast disseminated in the marketplace during the Class Period concerning Microvast's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Microvast to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Microvast within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Microvast securities.

96.    Each of the Individual Defendants, therefore, acted as a controlling person of Microvast.  By reason of their senior management positions and/or being directors of Microvast, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Microvast to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Microvast and possessed

27

the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

97.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Microvast.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 21, 2026                         Respectfully submitted,

                                            POMERANTZ LLP

                                            */s/ Jeremy A. Lieberman*
                                            Jeremy A. Lieberman
                                            J. Alexander Hood II
                                            600 Third Avenue, 20th Floor
                                            New York, New York 10016
                                            Telephone: (212) 661-1100
                                            Facsimile: (917) 463-1044
                                            jalieberman@pomlaw.com
                                            ahood@pomlaw.com

                                            THE BRISCOE LAW FIRM, PLLC
                                            Willie C. Briscoe
                                            State Bar Number 24001788

28

Case 4:26-cv-05804   Document 1   Filed 07/21/26 in TXSD   Page 29 of 32

5473 Blair Road, Suite 200
Dallas, Texas 75231
Telephone: (972) 521-6868
Facsimile: (346) 214-7463
wbriscoe@thebriscoelawfirm.com

*Attorneys for Plaintiff*

29

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, __Leah Graham_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Microvast Holdings, Inc. ("Microvast") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Microvast securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Microvast securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in Microvast securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my *pro rata* share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

**Executed** _____6/25/2026_____
                **(Date)**

DocuSigned by:

_Leah K Graham_
AC31F02915344F3...
_____
                **(Signature)**

Leah Graham
_____
                **(Type or Print Name)**

**Microvast Holdings, Inc. (MVST)**                                    **Leah Graham**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 6/12/2025 | 22 | $4.1950 |